In the first place it is claimed that the district described in the petition is not a “residence district,” as defined by Section 4 of the act, because it embraces parts of two streets, on each of which it is claimed more than 55 per cent, of the foot frontage on both sides of such streets, extending along said streets the distance of 500 feet, is used for manufacturing, mercantile or business purposes, not including saloons. The first street referred to is Hillsdale avenue. This street for substantially its whole extent that is available, and the abutting territory, is actually used by the Milburn Wagon Co. as a lumber yard. An examination of the premises in question satisfies me that the only sense in which it can be considered a street is that it was originally platted as such. In fact it appears that an application for its vacation made by the Milburn Wagon Co., who owns the property abutting upon it and to whom it will revert if vacated, is now pending before the council. If this is done all evidence that it is intended for the use of the public will be removed. The street frontage referred to in the Brannock Law is manifestly a frontage upan an actual street: not a paper street that can be found only upon the map, but what is set apart and used by the public for street purposes. It is well settled, as stated by Elliott in his work on Roads and Streets, Section 16, that “it is the purpose for which it (a street) was laid out, and the use made of it, that determines its character.”
*471 The second street claimed to destroy the territory described as a residence district is Post street, which is abutted on the north side by the buildings and works and yards of the Baker Foundry Co., for the distance of 440 feet and on the opposite .side for the distance of 277 feet by property belonging to the MeBeth-Evans Glass Co. The Baker Foundry Co.’s frontage is clearly manufacturing property as contemplated by the act in question, and if the opposite abutting frontage to the extent •of 255 feet is also manufacturing, mercantile or business property, this petition should be refused, because in that event the petition does not describe a “residence district.” From the ■evidence introduced and a personal inspection of the premises •of the MeBeth-Evans Glass Co., I am satisfied the claim made is not sustained by the facts. The glass company owns a tract •of ground containing about four and one-half acres, irregular in shape, with its buildings, factory and power plant occupying about one acre of ground in the centre of the tract. The •entire tract, except a small frontage on Post street occupied by .a residence and cooper shop is enclosed by a board fence ten feet high surmounted by barbed wire to prevent access to “their plant except through gates placed at the corner of Delaware avenue and Westlake street. The enclosed part of their frontage on Post street is 240 feet long and for a depth of about 150 feet to the line of the company’s buildings and much more than the ordinary depth of lots in that neighborhood, is “unoccupied and grown up with weeds. In one corner against the fence is an open shed belonging to the man who owns the cooper Shop, and since he ceased to use them more than a year ago, these sheds have been at times and now are to some extent used by the company for the storage of goods. About 100 feet from the fence is a hydrant of the city waterworks with a reel ■of hose attached within an iron building about four feet square and seven feet high. In line with this building is an iron building about ten feet square in which the meters of the gas company which supply the glass company with gas, are kept safe in case of fire, under lock and key and can be opened only by •those authorized to read the meters. Except as stated, this large tract of ground lying behween the buildings of the com *472 pany and Posi street and containing 36,000 square feet of land, is unoccupied and devoted to no immediate use. I do not think it can be said with any regard for the ordinary use of words, that this 240 feet of frontage enclosed by this fence, or any part of it, is “occupied for” or “actually devoted to” manufacturing, mercantile or business purposes.
But even if it were so held the contention must fail, because the cooper shop, so-called, is not so occupied or used. As before stated this “cooper shop” stands outside the company’s enclosure though upon its land. It was built at about the time the factory was started several years ago, by a cooper who intended to supply barrels for the glass company. Pie still owns the building and is at liberty to remove it at any time. More than a year ago the company quit using his goods and he gave up the business. Since that time the building has not been occupied for any purpose whatever. This shop stands on 37 feet of the Post street frontage, and, as without it, there are but 240 feet which it is claimed is devoted to manufactuaing or business purposes, the contention or the claim that the territory described in the petition is not a “residence district” can not be sustained.
The only remaining question is whether the petition now before me is signed by 40 per cent, of the qualified electors of the district. Of the 490 signatures to the original petition three names appear twice each, one petitioner has removed from the district since signing and before the petition was delivered to me, and another has moved from the district since it was delivered. I am satisfied that none but actual electors at the time the election is ordered can be counted. There remain therefore, but 485 electors to the original petition, and as the total vote at the last election was 920, and 40 per cent, of this is 368, the election must be ordered unless the activity of interested parties in securing withdrawals is to be rewarded by having the withdrawals allowed and the like zeal of others in securing more petitioners since the original petition was filed, is to beheld for naught.
On the subject of withdrawals from the petition I will say that since the presentation to me of the original petition of 485 electors, 130 have signified to me in writing their desire *473 that they be not counted as fayoring an election and asking that their names be stricken from the petition, and up to this tme five of these dissenters have asked that their withdrawals be not counted and that they be considered as still petitioning for an election. So that there remain 125 of the original 485 signers who desire to be not counted, which leaves but 360 petitioners if withdrawals are allowed. Although the propriety of admitting withdrawal, in view of the purpose of the act and the peculiar powers granted to the judge or mayor,, to whom the petition is required to be presented before an election can be ordered, may fairly be questioned, in my judgment, pending a determination of the question in his own mind as to whether the necessary number of electors have asked for an election, and at any time before the order is made, it is not only fair to all parties concerned, but it is also in line with the spirit and purpose of the law to permit electors to withdraw their petition individually or collectively.
I know of no case in which this question has been passed, upon under this law, and the ease of Grinnell v. Adams, 34 Ohio St., 44, cited by counsel, is not a precedent that even by analogy supports the contention that withdrawals are improper. That was a ease in which county commissioners had taken action on a petition filed by citizens as required by law in the matter of laying out or altering a county road. Having appointed viewers and received their report, certain of the petitioners signed a remonstrance against the improvement. The Supreme Court held that under these circumstances it was too late for the petitioners to nullify the proceeding which had been begun on their application, and that the commissioners could proceed with the work. . There are a number of eases in this state, on the other hand, cited by counsel who have presented these withdrawals, holding that where street and road improvements have been petitioned for or franchises assented to by property owners, and final action has not been taken by the body required to act on the same, the petitioner may withdraw and thus defeat the jurisdiction of the body first addressed to make the improvement or grant the franchise.
*474 Since the act (97 0. L., 87). requires that an election be •ordered “whenever 40 per cent, of the qualified electors of .any residence district of any municipal corporation shall petition the mayor of such municipal corporation, or a common pleas .judge of the county for the privilege to determine by ballot whether the sale of intoxicating liquor as a beverage shall be •prohibited within the limits of such residence district,” and imposes upon the mayor or judge to whom the petition is pre.sented, the duty of determining whether 40.per cent, of the electors are so petitioning, by fair analogy to other cases in which it is held that jurisdiction may be defeated by the petitioner ’s change of mind,-1 think this practice permissible under the Brannoek Law and that the withdrawals presented at this time should be allowed. This being done there remains of the original petitioners just eight signers less than the necessary ■40 per cent, and the application therefore must be denied unless the duplicate petition consisting of six sheets with duplicate headings and containing fifty-six signatures, filed yesterday, August 9, shall be counted in determining the question as to whether an election should be ordered. At. first blush, I think it' must appear reasonable that if electors are allowed to withdraw, other qualified electors should be accorded the privilege of joining in the original application. Indeed, I find nothing .in the law in question that would prevent this, and I see no reason why citizens of a given district may not file their common petition at such times and with such number of names as is found convenient, and whenever the officer with whom such petition or petitions are so filed, finds that 40 per cent, of the ■ electors of the district specified are asking for an election, it is his duty to order it no matter how long some of the papers may have been in his hands.
The limitation as to time- within which the election shall be •ordered upon the filing of the petition, being directory merely, .as held in Dayton (Petition for Election, In re, 2 N. P. — N. S., 245), the time of filing the petition becomes unimportant, except where elections are asked in different districts containing ■common territory. In that ease, the first petition, single or in *475 duplicate, signed by 40 per cent, of tbe electors of a given district, will be entitled to have the election ordered.
Walter Brown, for the brewery interests.
F. M. Dotson and George F. Wells, contra.
The proposition that duplicate petitions may be filed where the assent of a number of citizens is necessary to give jurisdiction to do a specific thing, is supported by several decisions in improvement eases. For instance, under a statute providing that “no order shall be made for the improvement or repairs of any road, street, or alley, except on the petition of two-thirds of the resident owners of the lots of land through or by which such road, street or alley, or part thereof to be improved or repaired shall pass,” it was held that “it is not essential that all signers should be on one petition” (Campbell v. Park, 32 Ohio St., 544).
Again Section 1, 64 O. L., 80, empowers county commissioners to construct and improve roads; and Section 2 provides:
“Before the commissioners of any county shall order any improvement mentioned in Section 1 of this act, a petition-shall be presented to them * * * signed by a majority of the landholders resident within said county, whose lands will be assessed for the expense of the same,” etc.
Under this act, a petition in duplicate for the improvement of a public road was presented to the county commissioners of Logan county. The duplicates were signed by different petitioners, but together showed the requisite number of petitioners to be resident landholders, whose lands were reported for assessment to pay the expense of the improvement. The Supreme Court held that the omission of the auditor to record one of the duplicates of the petition, constitutes no ground for enjoining the prosecution of the work (Braden v. Commissioners of Logan Co., 31 Ohio St., 386).
In this ease, therefore, to the 360 signers of the original papers filed with me, July 31, 1904, should be added the fifty-six names subscribed to the duplicate petition filed August 9, - 1904, which makes a total of 416, which is forty-eight more than the number required. A special election will therefore be ordered as asked in the petition.